## Case No. 2,856.

### CLARKE et al. v. JOHNSTON et al.

[8 Blatchf. 557.] [1]

Circuit Court, S. D. New York. Sept. 12, 1871. [2]

#### WILLS—CONSTRUCTION.

A codicil to a will contained the following provision: "The remaining two-thirds of the portions or shares of my daughters shall be held separate and distinct, and not liable to the control, debts, or engagements of either of their husbands which they now have, or may hereafter have, as well those who are married as she who may hereafter marry, giving, however, to the husbands of either or all of them, in case the wife shall die first, either with or without issue, the income of said reserved part of my estate, as long as he shall live, arising from his wife's portion, and, after his death, then to the child or children of my said daughter so dying." Held, that there was, in such provision, no expression or indication of any intention on the part of the testator, that there should be a limitation over in favor of the children of a daughter who should survive her husband; and that, where the husband of such daughter died, and she survived him, his death terminated the operation of the provision for his life estate, and the operation of the provision in favor of the child or children of his wife.

[See note at end of case.]

[In equity. Bill by George Augustus Clarke and Jeanet Virginia Clarke, infants under the age of twenty-one years, by Reuben Middleton, their guardian and next friend, against James B. Johnston and Adam Norrie, as executors of the last will and testament of James Boorman.]

Louis Janin and Max Goepp, for plaintiffs. Charles O'Conor, for defendants.

BLATCHFORD, District Judge. The prayer of the bill, in this case, is, that the defendants, as executors of the last will and testament of James Boorman, may come to a just and fair account of the settlement of the estate of James R. Smith, the great-grandfather of the plaintiffs, James Boorman having been an executor, and the last surviving executor, of the last will and testament of James R. Smith, and may be ordered to deliver to the plaintiffs a certain

legacy, alleged to have accrued to them under the will of James R. Smith, or, if that be impossible, to pay to them the just and present value of certain real estate, alleged to have accrued to them under such legacy.

James R. Smith, who was a merchant in the city of New York, died early in June, 1817, leaving a will executed January 23d, 1817, and a codicil executed May 30th, 1817, which were duly probated before the surrogate of the county of New York, June 11th, 1817. James R. Smith left surviving him four children: (1.) Jeanet, then the wife of the Reverend John X. Clarke, and who then had a child living, George Augustus Duncan Clarke, who was the father of the plaintiffs; (2.) Hannah, then the wife of Matthew St. Clair Clarke, and who then had children living; (3.) Elizabeth, then a minor, and unmarried, who afterwards became the wife of Joseph Duncan; (4.) James C. R., then a minor. By his will, James R. Smith appointed, as his executors, his widow, Hannah, and Andrew Foster, John Thomson, James Boorman, and Matthew St. Clair Clarke. Letters testamentary were granted to all of them but Foster. By his will, James R. Smith authorized his executors, in their discretion, to sell the whole, or any part, of his estate, real or personal, and directed that the residue of his estate, after the payment of his debts, should, unless the same, or any part thereof, should be otherwise disposed of, by codicil or codicils to his will, be distributed according to the laws of the state of New York, in the same manner as in case he had happened to die intestate. By the codicil, James R. Smith ratified and confirmed the will in all respects, except so far as any part thereof might or should be revoked or altered by such codicil. The codicil, after making various devises and bequests, in eleven clauses, proceeds as follows: "Twelfth. All the rest, residue and remainder of my estate, of every kind and nature whatsoever, and wheresoever situate, I give, devise and bequeath unto my said executors, in trust that the same shall be equally divided to and amongst my four children, share and share alike, and to their respective heirs. My will further is, that my son James and my daughter Elizabeth shall each have the sum of fifteen hundred dollars set apart by my said executors for their support and education, until they arrive at the age of twenty-one, and, if that sum shall not be found sufficient, my executors shall take such further sum, from their respective shares of my estate, as shall be necessary; and I do hereby give the tuition, care and guardianship of my said son James and my daughter Elizabeth to my said wife. My will further is, that my son James shall not come to the full possession and enjoyment of his portion of my estate until he shall arrive at the age of twenty-five years, nor shall he have the power to pawn, pledge, mortgage or dispose of it in any way, the same or any

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

[2] [Affirmed in Clarke v. Johnston, 18 Wall. (85 U. S.) 493.]

part thereof, before the expiration of that time, but shall be entitled to receive the income arising from his portion between the years of twenty-one and twenty-five. I further direct, that my daughters Jeanet, Hannah, and Elizabeth, if she should arrive at the age of twenty-one years, shall have the privilege of expending and appropriating, by and with the consent of the executors, one-third part of their portion of my estate herein devised to them, in such manner as they may think proper, and over which, when so appropriated, they shall have absolute control; and the remaining two-thirds of the portions or shares of my daughters shall be held separate and distinct, and not liable to the control, debts, or engagements of either of their husbands which they now have, or may hereafter have, as well those who are married as she who may hereafter marry, giving, however, to the husbands of either or all of them, in case the wife shall die first, either with or without issue, the income of said reserved part of my estate, as long as he shall live, arising from his wife's portion, and, after his death, then to the child or children of my said daughter so dying, and, if either of my daughters shall die without lawful issue, or having issue which shall not attain the age of twenty-one years, and without issue, then the share or portion of my said daughter, after the death of her husband, or if there be no husband living at her death, shall go and be divided among my other children, share and share alike, and to their issue, in case of the death of either of them, share and share alike, such issue to take the portion that would have belonged to his, her or their father or mother." John X. Clarke, the grandfather of the plaintiffs, died in 1824. His wife, Jeanet, the grandmother of the plaintiffs, died in September, 1847. George Augustus Duncan Clarke, the father of the plaintiffs, was born in November, 1815, and died in October, 1855.

The question involved in this case arises under the twelfth clause of the codicil. The plaintiffs contend, that, by the will and the codicil, the residue of the estate of James R. Smith, after the payment of debts and legacies, was devised to his executors, in trust, to be divided equally among his four children, share and share alike, and to their respective heirs; that each of the four children was to take one-fourth of the estate; that the son, James C. R., was to take his one-fourth in fee; that each of the three daughters was to take one-third of her one-fourth in full ownership, and a life estate only in the other two-thirds of such one-fourth, with remainder over, after such life estate, to her husband, if he should survive her; and that, after his death, the fee of such two-thirds of his deceased wife's one-fourth was to go to her child or children, if they attained the age of twenty-one years, and, if they died before that age, and without issue, then to the other

children of the testator, or their surviving heirs. This suit concerns the fee of the two-thirds of the share of the plaintiffs' grandmother, Jeanet, in which two-thirds the plaintiffs claim that their grandmother had only a life estate, and which fee they claim passed to their father on the decease of their grandmother. They allege that James Boorman, by his acts as executor, in wilful default, in conjunction with Matthew St. Clair Clarke, acting as executor, in like wilful default, placed such two-thirds of the share of the plaintiffs' grandmother, Jeanet, which two-thirds consisted wholly of real estate, in such a position that the title to such real estate passed into the hands of bona fide purchasers for a valuable consideration, without notice, whereby the plaintiffs and their father were deprived thereof entirely, and that, therefore, the estate of James Boorman must respond to the plaintiffs for such breach of trust, in the present value of the property of which they have been so deprived. By 1829, James Boorman and Matthew St. Clair Clarke had come to be the sole acting executors of the will of James R. Smith, the widow and Thomson having died, and Foster never having acted as executor. On the 1st of October, 1829, James C. R. Smith having attained the age of twenty-five years, and all the debts of the testator having been paid, a partition, division, and valuation of his estate, into four parts equal in value, was agreed upon by the parties interested in it, namely, the three daughters, the husbands of Hannah and Elizabeth, and James C. R. By a deed of November 15th, 1829, all those parties, other than James C. R., conveyed and confirmed to him certain real estate described in the deed, which he thereby accepted as his one-fourth part of the estate. The two acting executors, described therein as surviving executors, joined in this deed. By a deed of the same date, executed by the two acting executors, and by Matthew St. Clair Clarke and his wife, James C. R. Smith and his wife, and Joseph Duncan and his wife, and which recited that the debts of the estate had all been paid, that the residue of the estate of James R. Smith consisted principally in real estate, that the daughters of the testator were desirous to appropriate their respective one-third parts of their respective portions of the estate, that the executors were willing that they should do so, that it was universally admitted by all the heirs and devisees, namely, the three daughters, the son, and the husbands of Hannah and Elizabeth, that a sale of the estate to convert it into money would be very injurious to all concerned, and that, by agreement among the heirs, the whole of the real estate had been parted, divided, and valued, in four distinct and equal parts, the grantors conveyed to Jeanet Clarke certain real estate, in satisfaction of the one-third part of her portion, authorized by the will to be appropriated to her, and over which, when so appropriated,

she was to have absolute control. By a deed of the same date, executed by the two acting executors, and by Jeanet Clarke, Hannah Clarke and her husband, and James C. R. Smith and his wife, and containing like recitals as the last named deed, the grantors conveyed to Elizabeth Duncan and her husband certain real estate, in satisfaction of the one-third part of the portion of Elizabeth, authorized by the will to be appropriated by her. By a deed of the same date, executed by the two acting executors, and by James C. R. Smith and his wife, Jeanet Clarke, Hannah Clarke and her husband, and Elizabeth Duncan and her husband, and which expressed a consideration of $8,948.68, and contained no recitals except that the executors, in pursuance of the power contained in the will, had sold to the grantee, for such consideration, the real estate described in such deed, the grantors conveyed to one Robert Dyson such real estate. By a deed of the same date, containing no recitals, and expressing a consideration of $8,948.68, Dyson conveyed the same real estate to Hannah Clarke and her husband, to have and to hold to them and to the heirs and assigns of Hannah forever. These two deeds, the one to Dyson and the one from him, though not so expressed, were, in fact, conveyances of the one-third part of the portion of Hannah, authorized by the will to be appropriated by her, and were so given and received. By these conveyances, and others made at the same time or previously, the entire estate of James R. Smith was disposed of, except the two-thirds of the shares of each of the three daughters.

On the 26th of December, 1829, the two acting executors, James C. R. Smith and his wife, Jeanet Clarke, Hannah Clarke and her husband, and Elizabeth Duncan and her husband, conveyed to Robert Dyson, by deed, certain real estate therein described, which was in fact all the residue of the real estate left by James R. Smith. This deed expressed a consideration of $64,710.59, paid by the grantee to Matthew St. Clair Clarke, and stated that the executors had, for such consideration, and in pursuance of the power contained in the will, sold to the grantee the described real estate. On the same day, Dyson, by a deed, expressing a consideration of $21,573.13, conveyed to Jeanet Clarke certain of the real estate so conveyed to him; and, by another deed, expressing a consideration of $21,614.56, conveyed to Hannah Clarke and her husband certain other of the real estate so conveyed to him; and, by another deed, expressing a consideration of $21,522.90, conveyed to Elizabeth Duncan and her husband the residue of the real estate so conveyed to him. These deeds were all of them deeds in fee. It is of this conveyance to Dyson that the plaintiffs complain, as having disposed of the reserved two-thirds of the share of their grandmother, so as to deprive them and their fa-

ther of the fee of such two-thirds. The real estate so conveyed to Dyson passed into the hands of bona fide purchasers. Such real estate represented the two-thirds of the shares of the three daughters; as agreed upon in the partition, and each of the three deeds from Dyson represented one-third of such two-thirds. As a part of this arrangement, it was agreed among all parties, that all the heirs should enter into a bond of indemnity to Mr. Boorman, to save him harmless on account of making the deed to Dyson; that James C. R. Smith should give to Matthew St. Clair Clarke an indemnity bond to the same import; and that Jeanet Clarke, and Elizabeth Duncan and her husband, should execute mortgages of certain property to Mr. Boorman and Matthew St. Clair Clarke, as an indemnity to the latter and further assurance to Mr. Boorman, such mortgages to hold until the trust named in the will concerning the two-thirds of the portions of the three daughters should have been legally extinguished or complied with. The mortgages contemplated were not given. But Matthew St. Clair Clarke, James C. R. Smith, Jeanet Clarke and Joseph Duncan executed, on the 10th of July, 1830, an instrument of indemnity to Mr. Boorman. That instrument recites the provisions of the twelfth clause of the codicil, the conveyance of real estate to the son for his one-fourth share, the conveyance of other real estate for the one-third part of the share of each daughter, the conveyance to Dyson, December 26th, 1829, of "all and singular the remaining two-third parts of the portions or shares of the daughters of the said testator, comprehending all the rest, residue and remainder of his real estate," the fact that no portion of the consideration of the sale to Dyson had been received by Mr. Boorman, but that it had, with the consent of all parties interested, gone exclusively into the hands of Matthew St. Clair Clarke, and the fact that Mr. Boorman had accounted for all the effects of the estate which had come to his hands, and had discharged himself of all the trusts reposed in him by the will and the codicil, and then provides, that Matthew St. Clair Clarke and Duncan, for themselves and their wives, and the others for themselves, discharge Mr. Boorman from all moneys which he could have received in his trust, and from all claims concerning the estate of the testator, or any trust relating thereto, and agree to indemnify him from all demands by reason of his having executed any of the conveyances thereinbefore mentioned, or by reason of any other thing by him done, committed or suffered, concerning the estate of the testator, whether under the trusts in the will and codicil, or otherwise. On the 30th of June, 1830, a mortgage was executed by Elizabeth Duncan and her husband to Jeanet Clarke, Hannah Clarke and her husband, and James C. R. Smith. It recites the provisions of the twelfth clause of the codicil

as to the two-thirds of the shares of the daughters, and then proceeds: "And whereas, by mutual and universal agreement of all the parties interested, the whole of the said two-thirds of the real estate of the said James R. Smith, deceased, has been parted and divided, and, by divers conveyances, has been vested absolutely in the respective daughters and their heirs and assigns, and whereas, it is the wish and intention of the said parties of the first part, that this indenture shall operate and be a security on the part of them, the said parties of the first part, for the faithful fulfilment of the provisions contained in the said recited portion of said will and testament and codicil." The consideration of the mortgage is $10,000, and it covers certain real estate in the city of New York. Its condition is, that the provisions contained in the recited portion of the will and codicil shall be fully and faithfully fulfilled on the part of the mortgagors, they to retain the right to rent and lease the property for a period not exceeding twenty-one years. This mortgage was recorded October 2d, 1830, and was satisfied of record January 19th, 1835. On the 10th of July, 1830, two other mortgages were executed, one by Jeanet Clarke to Hannah Clarke and her husband, James C. R. Smith, and Elizabeth Duncan and her husband, and the other by Hannah Clarke and her husband to Jeanet Clarke, James C. R. Smith, and Elizabeth Duncan and her husband. These mortgages contain similar recitals and provisions, and a like condition, mutatis mutandis, with the mortgage from the Duncans, and cover real estate in the city of New York. They were recorded October 2d, 1830, and were satisfied of record March 26th, 1835.

At the time the two-thirds of Jeanet Clarke's share of the estate was thus conveyed to her in fee, her son was but fourteen years of age. So far, therefore, as Jeanet Clarke's share was concerned, Mr. Boorman needed indemnity against the contingency that such son might die under the age of twenty-one years and without issue, in which case the mother and sisters of Jeanet Clarke, or their issue, would come to take the two-thirds of the share of Jeanet Clarke.

The first question to be considered is the proper construction of the provision of the twelfth clause of the codicil as to the two-thirds of each daughter's share. So far as Jeanet Clarke's two-thirds of her share is concerned, the fact that the plaintiffs' father survived his mother, and died when over twenty-one years of age, leaving issue, defeated the limitation over to her brother and sisters and their issue, in any view that may be taken of the provision for such limitation over. The only practical question, therefore, is, as to what estate Jeanet Clarke took in the two-thirds of her share of the estate. The controlling provision is thus worded: "The remaining two-thirds of the portions or shares of my daughters shall be held separate and distinct, and not liable to the control, debts or engagements of either of their husbands which they now have, or may hereafter have, as well those who are married as she who may hereafter marry, giving, however, to the husbands of either or all of them, in case the wife shall die first, either with or without issue, the income of said reserved part of my estate, as long as he shall live, arising from his wife's portion, and. after his death, then to the child or children of my said daughter so dying." It is impossible to say that there is, in this provision, or in any part of the twelfth clause of the codicil, the expression or indication of any intention on the part of the testator that there should be a limitation over in favor of the children of a daughter who should survive her husband. The two-thirds of the daughter's share is to be held separate and distinct, so that it may not be liable for her husband's debts, and so that, if he survive her, he may have the income of it for his life. If he does not survive her, the fee of such two-thirds is freed from all possibilities in favor of her children, and remains subject only to the contingent provision in favor of the other children of the testator and their issue. The provision in favor of the child or children of a daughter "so dying," is one that is expressly made to take effect only after the death of the husband of a daughter who survives such daughter. Jeanet Clarke survived her husband. His death terminated the operation of the provision for his life estate, and the operation of the provision in favor of the child or children of his wife. It is admitted, on the part of the plaintiffs, that they have no cause of action unless Jeanet Clarke took only a life estate in the two-thirds of her share, and unless, at her death, such two-thirds passed to the plaintiffs' father. As the two-thirds of her share did not pass to the plaintiffs' father, it follows that the bill must be dismissed, with costs.

[NOTE. An appeal was taken to the supreme court, where the decree of the circuit court was affirmed.

[The court left the construction of the will on the question of estate in fee or life estate with vested remainder undecided, commented on the inefficiency of rules of decision and decided cases as guides, and held, as appears by the headnotes, prepared by Mr. Justice Miller, as here set forth:

[That the violation of trust growing out of a mistaken construction of a will by the executors, unaccompanied by fraudulent intent, was within the ten-years statute of limitation of the state of New York, concerning actions for relief in cases of trust not cognizable by courts of law.

[That the court was inclined to the opinion that such a case was not within the protection of the statute which allows bills for relief on the ground of fraud to be filed within six years after the discovery of the fraud.

[That the party interested, in his lifetime, having had notice of all the facts which constituted the ground of fraud alleged in the bill, and for eight years that he lived after the cause of action accrued to him, with notice of his right and of the whole transaction, having brought no suit nor set up any claim, his heirs

were not entitled to the benefit of this exemption from the bar of the statute on the ground of recent discovery of the fraud.

[That when a trustee has closed his trust relation to the property and to the cestui que trust, and parted with all control of the property, the statute of limitations runs in his favor, notwithstanding it is an express trust.

[That the general doctrines of courts of equity concerning lapse of time, laches, and stale claims will protect the executors of a trustee sued after his death for matters growing out of the trust which occurred forty years before suit brought, which were known to the ancestor under whom plaintiffs claim for over twenty years before his death, and where the suit is brought by those heirs fourteen years after his death, and two years after the death of the trustee, and where no person connected with the transactions complained of remains alive.

[Clarke v. Johnston, 18 Wall. (85 U. S.) 493.]